KAB

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan Michael Ploof, | No. CV 13-0946-PHX-DGC (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Jonathan Michael Ploof, who is confined in the Arizona State Prison Complex-Eyman, brought this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 61). He raises claims regarding alleged failure to provide him with adequate healthcare and deliberate indifference to the fact that the failure to do so has resulted in significant injury to his heart. On screening pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff adequately stated an Eighth Amendment claim against Director Charles L. Ryan, Facility Health Administrator and Contract Monitor Matthew A. Musson, and Division Director and Health Services Program Evaluation Administrator Richard Pratt and directed them to answer the Second Amended Complaint. (Doc. 76).

Pending before the Court is Plaintiff's "Motion for Emergency Mandatory Preliminary Injunction, Temporary Restraining Order, Fed. R. Civ. P. 65(A)(2)(3)" (Doc. 89) (the "Motion").

. . . .

. . . .

## I. Plaintiff's Motion

Plaintiff requests that the Court order Defendants to immediately schedule Plaintiff for an appointment with a cardiac specialist and order that the specialist "freely explain past and present practitioner consultation reports that remain missing and/or unexplained to Plaintiff." (Doc. 89 at 1). Plaintiff further requests that the Court order Defendants to "immediately authorize cardiac doctors of record to review existing reports and explain [Plaintiff's] cardiac condition." (*Id.* at 2). Plaintiff also requests that the Court order Defendants to "comply with all recommendations from the consulting cardiologist as well as all existing cardiologist reports."[1]

To support his Motion, Plaintiff alleges as follows: Defendants have "failed to take reasonable measures to abate the impermiss[i]ble risk of harm [Plaintiff] face[s] without proper timely consultation and treatment from cardiac doctors for a known serious heart condition." (*Id.*). Under Defendants' policy, when inmates are referred to an outside specialist, the specialist is directed not to inform the inmate of any recommended treatment, hospitalization, recommended tests or treatment. (*Id.* at 3-4). On May 20, 2014, Plaintiff asked Dr. Hussan Makki, a cardiologist, about the doctor's findings as to Plaintiff's condition and Dr. Makki told Plaintiff to discuss the condition with his doctor. (*Id.* at 4). Plaintiff has "consistently" drafted Health Needs Requests (HNRs) asking for review of the doctor's records and to receive a consultation, but unit

---

[1] Plaintiff also requests broad orders from the Court (1) declaring that "Defendants, their agents, employees, and all persons acting in concert with them under color of state law d[e]scribed herein are in violation of Plaintiff's rights under . . . the 8th amendment"; and (2) to enjoin "Defendants, their agents, employees, and all persons acting in concert with them under color of state law from subjecting Plaintiff . . . to further risk of harm and illegal and unconstitutional conditions, acts, practices, and procedures that cause delays." (Doc. 89).

The Court only has jurisdiction over Defendants in this case and does not have the power to enjoin or order various other unspecified parties to take or refrain from taking any actions. Moreover, Plaintiff's broad requests lack specificity, are not narrowly drawn, and are unsupported by the facts in his motion. Accordingly, those requests will be denied.

providers have indicated that they are attempting to locate the reports from his May 20, 2014 visit. (*Id.* at 5).

On June 12, 2014, Kent Ainslie, a physician's assistant (PA), told Plaintiff that his condition is worse and Plaintiff has a Grade 3 defect, but noted that he could not locate the report and recommendations for treatment. (*Id.*). Plaintiff's treatment has been delayed in the past due to misplaced reports. (*Id.*). Plaintiff alleges that he needs proper medical care and treatment for his "life threatening heart condition."

In Response, Defendants present the following evidence:

On March 18, 2014, Plaintiff was seen by Dr. Candipan, a cardiologist at St. Luke's Hospital, who recommended that Plaintiff have a Lexican stress test done in the "near future," that Plaintiff continue his current medications, and that Plaintiff be given a follow-up in the clinic after the stress test was completed. (Doc. 113-1 at 8). On May 20, 2014, Plaintiff underwent a Lexiscan Nuclear Stress Test with Dr. Hassan Makki at St. Luke's Hospital. (*Id.* at 10). On June 12, 2014, PA Ainslie noted in Plaintiff's medical records that Plaintiff had a follow-up cardiology consult on May 20, 2014 and that only a partial report was received. (*Id.* at 14). PA Ainslie further noted that the medical records librarian faxed a request for the full report and Plaintiff would be seen as soon as possible after the report was received. (*Id.*).

On July 10, 2014, PA Salyer reviewed the results of the May 20, 2014 Lexiscan Nuclear Stress Test. (*Id.* at 10). The results indicated that the EKG portion of the test was negative and the radiology portion of the test indicated that Plaintiff has a Grade 3 fixed defect of the left ventricle with no evidence of ischemia. (*Id.* at 17-18). The test also showed that Plaintiff's ejection fraction is less than 46% and Dr. Hegmann, a Corizon physician, asserts that although 46% is below normal ejection fraction, it is not life threatening. (*Id.* at 4, ¶ 10). PA Salyer also noted that Plaintiff had submitted an HNR regarding chest pain, that an appointment was to be scheduled with a health care provider for counseling and chronic chest pain management, that Plaintiff was to have his vital signs taken and an EKG conducted by a nurse, and that a healthcare provider was to

1  be called if Plaintiff's results were abnormal.  (*Id.* at 18).

2        On July 31, 2014, Plaintiff was seen by Family Nurse Practitioner (FNP)
3  McKamey for complaints of left knee pain and, at that time, McKamey went over his lab
4  stress test reports with him, and requested a cardiology consult.  (*Id.* at 20).

5        Based on this evidence, Defendants argue that Plaintiff's Motion should be denied
6  because he has presented no evidence that he will suffer harm without a court order.

7        In Reply, Plaintiff presents evidence that Defendant Ryan granted Plaintiff's
8  appeal as to his grievance that he was not receiving follow-up from staff upon return
9  from offsite medical appointments and that he had not received the results of the 5/20/14
10 Lexiscan.  (Doc. 115 at 8-9).  Plaintiff denies that that FNP McKamey reviewed his lab
11 stress test reports with him.  (Doc. 115 at 2).  Plaintiff also states that Salyer and Ainslie
12 did not go over their review of Plaintiff's reports with Plaintiff.  (*Id.*).

13 **II.   Legal Standard**

14       "A preliminary injunction is 'an extraordinary and drastic remedy, one that should
15 not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"
16 *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*,
17 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*,
18 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary
19 remedy never awarded as of right").  A plaintiff seeking a preliminary injunction must
20 show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable
21 harm without an injunction, (3) the balance of equities tips in his favor, and (4) an
22 injunction is in the public interest.  *Winter*, 555 U.S. at 20.  "But if a plaintiff can only
23 show that there are 'serious questions going to the merits'—a lesser showing than
24 likelihood of success on the merits—then a preliminary injunction may still issue if the
25 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter*
26 factors are satisfied."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th
27 Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th
28 Cir. 2011)).  Under this serious questions variant of the *Winter* test, "[t]he elements . . .

1  must be balanced, so that a stronger showing of one element may offset a weaker
2  showing of another." *Lopez*, 680 F.3d at 1072.

3        Regardless of which standard applies, the movant "has the burden of proof on each
4  element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016,
5  1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a
6  mandatory preliminary injunction, which should not be granted "unless the facts and law
7  clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441
8  (9th Cir. 1986) (citation omitted).

9        The Prison Litigation Reform Act (the "PLRA") imposes additional requirements
10 on prisoner litigants who seek preliminary injunctive relief against prison officials and
11 requires that any injunctive relief be narrowly drawn and the least intrusive means
12 necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State*
13 *of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

14 **III.   Analysis**

15       The Court will deny the Motion because Plaintiff does not link the actions of the
16 Defendants in this case to any delay in his healthcare and does not demonstrate that he
17 will suffer immediate irreparable harm without injunctive relief. Although Plaintiff
18 alleges that Defendants' policies resulted in a delay in care due to missing records from
19 his file, Plaintiff fails to show how those policies resulted in a delay of care. Rather, the
20 evidence shows that the prison did not immediately receive the full results of the
21 Lexiscan Nuclear Stress Test performed by Dr. Hassan Makki and had to follow-up with
22 St. Luke's Hospital before the full results were obtained. Moreover, Plaintiff himself has
23 presented evidence that Defendant Ryan did not approve of the fact that Plaintiff had not
24 been informed of his Lexiscan Nuclear Stress Test or the fact that Plaintiff was not being
25 seen by onsite medical staff upon his return from offsite medical appointments and
26 granted Plaintiff's appeal as to those claims. (Doc. 115 at 8). Plaintiff does not provide
27 any evidence demonstrating that any of the policies of the Defendants in this case
28 resulted in a delay of Plaintiff's medical care as asserted in the Motion and Plaintiff has

- 5 -

presented no evidence that Defendants are denying him necessary treatment or the necessary treatment is being denied based on Defendants' policies.

Plaintiff does not explain how ordering specialists to discuss Plaintiff's condition with him will prevent irreparable harm and Plaintiff does not otherwise demonstrate that he will suffer irreparable harm in the absence of an injunction. *See Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief") (emphasis in original). Thus, Plaintiff has failed to meet his burden in demonstrating his entitlement to either a temporary restraining order or a preliminary injunction, and his motion will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's "Motion for Emergency Mandatory Preliminary Injunction, Temporary Restraining Order, Fed. R. Civ. P. 65(A)(2)(3)" (Doc. 89).

(2) Plaintiff's "Motion for Emergency Mandatory Preliminary Injunction, Temporary Restraining Order, Fed. R. Civ. P. 65(A)(2)(3)" (Doc. 89) is **denied**.

Dated this 23rd day of December, 2014.

David G. Campbell
United States District Judge

- 6 -